The next case is PacNet Services, United States Department of Treasury. Do you need to reset the timer? Sorry, do you need to reset the timer? Good morning, and may it please the court, my name is Alexandra Shapiro and I represent the three PacNet group of appellants in these two consolidated appeals. As the court is aware, the district court has issued an indicative ruling recently stating that if the case is remanded, it will lift the stay of the young ancillary proceeding. In light of that development and the history of these proceedings, which have been going on for many years and have deprived appellants of their ability to obtain a ruling on the merits of that petition, we ask the court to provide the following relief. In the young case, we ask the court to vacate the stay and remand the case and direct the district court to lift the stay and do three things. First, to proceed expeditiously to rule on the merits of appellant's petition. Second, to direct the district court to apply the honeycut rule to this case. And third, to apply the rules of civil procedure in these proceedings as is required by Criminal Rule 52.2 in this court's decisions in Bradley and Watts. And in addition, in the interpleader case, we ask the court to reverse the dismissal and direct the district court to reinstate the action and stay it pending the outcome of the ancillary proceeding in young, so that if appellants prevail, the money the government has illegally forfeited can be returned to the court registry for distribution in the interpleader case. The reason that we're asking the court for these instructions to the district court as to the young case is that, first, we think it's important that this court ask the district court to act expeditiously in light of the many years of delay that have led up to this point. Indeed, the statute at issue section 853 and 4 presumes that it states that to the extent practical and consistent with the interest of justice, a hearing is typically supposed to occur within 30 days. And this has been years. And second, with respect to honeycut, we feel this court's guidance is needed, even if the case is going to go right back down to the district court to proceed to the merits, because the district court indicated in its ruling that it was unclear and it may not be the case that honeycut applies to the statute. What is the rule in honeycut that you would ask us to instruct the district court to apply? The rule that, so our argument is that the underlying preliminary order of forfeiture is invalid for a couple of reasons, because honeycut says that forfeiture can only be effectuated if the defendant has obtained the property at issue. And in this case, there was no showing, and we believe it's pretty much impossible for the government to show, that the particular funds that were seized were ever obtained by Defendant Young, nor were they traceable to his offense. I guess I'm asking, it seems a little to me that that would be putting the cart before the horse, that the ancillary proceeding would be establishing some facts. Maybe those facts would be whether the funds were, you know, these funds were not obtained. And then there's an analysis about this statute and how honeycut would apply in this context. I'm just a, I'm searching for what we could say at this juncture in the proceedings about other than don't forget to read honeycut. Well, I think the district court indicated that it didn't believe the rule of honeycut that prohibits the imposition of a forfeiture order based on joint and several liability applies to Section 981. And not only have, is the statutory language virtually identical to that of the drug statute at issue in honeycut, but in addition, the government has repeatedly conceded as much and has conceded both in this court and the Solicitor General has conceded in the U.S. Supreme Court that the honeycut rule applies to this statute. And in addition, several other circuits have so held. So we think it's important for this court to provide that guidance because the district court appeared unclear on the point. And then the third thing in that regard was just simply that we think it's important that the district court be reminded that the rules of civil procedure apply here in part because with respect to Your Honor's questions about the facts, there may, it's conceivable that there may be some factual dispute as to some aspect of this, but up to this point, as to all but a small sum that relates to monies that are owed to, not to Young, but to entities controlled by another defendant in a different case, Barca, the government has never asserted, and we don't believe they could, that these funds were Young's. Indeed, the funds from the accounts of the entities Chex and Accurate have nothing to do with the fraud by Young or any of these others. The Chex company was an outbound processor of payments. Accurate was a foreign exchange company. None of that has anything to do with any of this, and the government has never suggested any of the funds in those accounts had anything to do with Young's fraud. And then the last point was just simply that we think that given that the interpleader, the whole purpose of the interpleader was to have funds in the court registry so that anyone claiming these funds could have their rights adjudicated and the PACNET entities could be, or PACNET itself actually, the only party in there, could get the adjudication that it wasn't liable for any of those funds. We think it's critical that the court reinstate the interpleader, even if it's going to be stayed pending the outcome of the ancillary proceeding, which will determine whether there's money that needs to go back to fund the interpleader. Unless the court has any other questions. Ms. Shapiro, I have a question. If we were to remand the criminal action, as you suggest, for the lifting of the stay, would that moot your appeal in the criminal action? In the criminal? Well, it wouldn't moot the appeal on the interpleader because the interpleader has been dismissed. I don't think it would moot the appeal. I mean, I think what we're saying is that we'll consent to a remand for that purpose, given that the district court has indicated it will issue the stay, and, therefore, I don't think whether the stay should be lifted is really in dispute unless government counsel has a sudden change of mind. But thank you. Thank you. Good morning. Thank you. I want to thank the court for the opportunity to appear remotely, and I hope that you can hear me. My name is Marcos Jimenez, and I represent the Interested Party International Payment Systems. For six years, International Payment Systems, IPAO, has been caught in the crossfire between the government and PACNET, and I'll be very brief. It's undisputed in this case that my client, IPAO, did not engage in any improper conduct, either with respect to Ryan Young in the criminal case or the PACNET principals in the Day case. Yet it's never been given an opportunity to present its claim to the funds. First, the funds were taken from the interpreter action after my client moved to intervene. And then the Young case was indefinitely stayed until the government had its change of heart shortly before this oral argument. And, well, it's still a stay. So we would request that the case be expeditiously remanded so that our client can proceed and assert its claim. And I would extend one factual point, which is this. It's undisputed in this case that one of the accounts at issue, which is at Union Bank, held only my client IPAO's funds. The record is undisputed on that point. So if the Supreme Court's decision in Cayley requires there to be a connection between the money and the criminal offense, how could there possibly be any criminal forfeiture with respect to funds that belong to my client that had nothing to do with any criminal offense, whether it's Ryan Young or it's any of the Day defendants? So we would request that we would be given that opportunity to present that claim, which should be very clear to the district court. And with that, I join in the request of the other of the appellant. Thank you. Any questions? Yes. Mr. Jimenez, did you file your notice of appeal within the 60 days laid out in Rule 4A1B of the federal rules of appellate procedure? Your Honor, I was not involved in the case at that time. Well, when I say you, I mean your client. Yes. Yes. The client at that point represented by other counsel did not, Your Honor. So we simply are here as an interested party. PACNET's appeal is timely. The government has made arguments against the submissions that we made, and we wanted to, despite that, respond to the government's arguments and to demonstrate to the court that our client has nothing to do with the criminal offense in this case and that it should be given its right to assert its claim to the funds. Now, tell me if I understand the record correctly, you're asking us for relief in the form of an order that lifts the stay of the criminal forfeiture action, correct? Yes, Your Honor. And we've also asked, as PACNET did in its brief, that the funds be returned to the interplea case so that they can be adjudicated there where our client did move to intervene and has been waiting. Am I correct that you, and I say you, not Mr. Jimenez, but your client, you did oppose the government's motion for an indicative ruling before the district court? Yes, Your Honor. We did it because of the fact that it was only done very shortly before this oral argument. And we certainly oppose it because we believe that the funds should be returned to the interplea direction and not to the forfeiture action. Thank you. We'll hear from the government. Thank you. May it please the court. Good morning. My name is Tanisha Payne. I'm appearing on behalf of the United States. I will be primarily addressing the criminal forfeiture matters in this case. And my colleague, AUSA Solovechik, will address any questions from the court regarding the civil docket. The United States requests that the order of the district court be affirmed and that the case be remanded to the district court for commencement of the criminal forfeiture ancillary proceeding so that claims to the property at issue in this case may be adjudicated. As the issue of remand is no longer in controversy, I will turn my remarks to other aspects of the brief. Can I just ask you briefly what happens next then on remand? What's to stop the government from seeking another stay? The basis, the government moved for this stay because there has been a change of circumstances. And the government has previewed and previewed its evidence in other criminal cases. Specifically, there was a recent trial in May 2022 related to one of PACNET's co-conspirators. And in that case, the government presented its evidence. And so the concerns regarding a preview of the government's evidence is no longer a concern. A core issue to be decided by this court is can appellants, as third parties, move to set aside the preliminary order of forfeiture in a criminal case? According to the forfeiture statutes and law, the answer is no. Title 21 United States Code Section 853 bars third parties from intervening in a trial in a criminal case for appeal. Federal Rule 32.2B provides that the court must enter the preliminary order of forfeiture without regard to any third party's interest. Is that issue really still before us anymore? I mean, based on the arguments that I heard from the other side this morning, they say remand, and we want the district court to proceed expeditiously to what I would think of as stage two, should a permanent final order of forfeiture be entered. And if that's going to happen, it doesn't really, I don't know that they're still seeking anything with regard to the preliminary order of forfeiture. They can tell me something different on rebuttal, but it doesn't seem like it's really before us. My understanding of Appellant's arguments is that they seek to vacate the preliminary order of forfeiture and have a portion of the funds moved to the interpleader case. I agree with Your Honor that it's helpful to step back and discuss the criminal forfeiture process in two phases. In the first phase, the court determines whether the specific property is subject to forfeiture in accordance with an applicable statute. In other words, whether the property represents the proceeds of the offense, was used to facilitate the offense, or was involved in the offense in some other way. Following a conviction or guilty plea, the court enters a preliminary order of forfeiture, forfeiting the property and the defendant's interest in the property. The second phase in the criminal forfeiture process is the ancillary proceeding, where the court determines the interests of any third parties in the property listed in the preliminary order of forfeiture. After the conclusion of the ancillary proceeding, the court enters a final order of forfeiture. In Young, the criminal forfeiture process followed the same template. There was an initial determination of forfeitability, in that United States magistrate judges reviewed the evidence as to the specific assets at issue here, the funds seized from PACNET's accounts, and found probable cause to believe that the funds constituted or were derived from proceeds traceable to mail fraud and property involved in money laundering, and therefore were subject to forfeiture to the United States, pursuant to Title 18 United States Code Sections 981A1A, 981A1C, 981B1, and 982A1. The specific assets were included in the preliminary order of forfeiture entered against Ryan Young, one of PACNET's co-conspirators. Contrary to appellant's arguments, the preliminary order did not order the final forfeiture of the assets to the United States. It specifically stated that the assets would only be forfeited to the United States after any and all claims were adjudicated by the district court in the ancillary proceeding. The order also provided instructions for how third parties may file a petition. PACNET later filed a petition to adjudicate its property interests in connection with the preliminary order. With respect to appellant's objection to the inclusion of its claimed funds in Young's preliminary order, Second Circuit case law is clear that the district court may order the forfeiture of any property with a nexus to the offense, regardless of whether the criminal defendant or someone else entirely owns that property. Further, property derived from a criminal conspiracy may be forfeited from any co-conspirator,  Here, the requisite nexus exists between the funds at issue and the charges in Young. The government's investigation revealed that Young and PACNET are co-conspirators. PACNET processed victim payments on behalf of Young's mail fraud schemes from approximately 2012 through 2017. Consistent with PACNET's own statements in its interpleader complaint, at least $834,000 of the funds at issue in this case are traceable to the mail fraud conspiracy in Young. In any event, Rule 32.2b2 provides that it is not necessary to determine at the preliminary order stage what interest any defendant might have in the property. Instead, the court should order the forfeiture of whatever interest a defendant might have in the property and later conduct the ancillary proceeding. Likewise, the appellant's reliance on Honeycutt in this case is misplaced. Honeycutt was limited to a forfeiture money judgment and did not apply to specific assets. The concerns that Honeycutt was meant to address are not present in this case. The government is not attempting to impose joint and several liability and is not attempting to collect a money judgment from Young for an amount that he did not personally obtain. Here, the specific assets have been traced to crime, so there is no reason for this court to extend Honeycutt to this case. So therefore, the ancillary proceeding provides due process and is an adequate remedy to adjudicate interest in property subject to forfeiture. Well, the problem with it is that it's been stayed for so long, right? And so I don't know at what point it crosses into a due process problem, but I guess on remand, now things will move forward. So I don't know that we have to address that. Your Honor, the government submits that the time was reasonable and the district court was correct in issuing the stay of the ancillary proceeding. What was the basis for the delay for the last, at least since 19, it seems like? During that time, Your Honor, the forfeiture and financial investigation was going on. There was also a criminal investigation against Packnett's principles. This case is very complex. Packnett was involved in mail fraud for approximately 20 years. There were various criminal and civil cases across the country involving these mass mail fraud solicitations that targeted elderly victims for which Packnett processed the victim payments. And the reason that a stay needed to remain in place was that discovery and the ancillary proceeding could harm that ongoing investigation? That's correct. But, you know, to the extent that, as you've described, you can bring the money in and then wait until the ancillary proceeding to sort out third-party claims, at some point that would be a pretty serious harm if the investigation is going to take years with regard to third parties who may have legitimate claims on property and Yes, Your Honor. Yes, there could be circumstances where the length of time could be harmful. But I think in this case, if we look at what was going on during the proceeding Five years isn't too long? I mean, it seems like that's problematic. Not in every case. And if I can address the iPayout claim regarding its claim of harm. IPS has not demonstrated that it suffered undue harm or prejudice as a result of the delay. iPayout has other remedies that it could pursue. It has not identified any specific funds that belong to them. The government disagrees that any specific funds have been identified by them. They are at most a general creditor, and they have remedies available to them, including lawsuits against PACNET in order to reclaim the debt that is owed them. And notably, PACNET has not claimed that it doesn't have the money to pay iPayout for its debt. So I do agree that there may be cases where a delay could be unreasonable. But the law anticipates that third parties will have to wait for their claims to be adjudicated. And also another factor in this case, PACNET had been designated by OFAC and had been dissolved. And so this case was fairly complex. There were several investigations going on. The latest seizure by the government was in 2020, although the first seizure was in 2016. But the investigation- Is something that happened with regard to the danger posed of discovery that led to the indicative, your motion for an indicative ruling at the time, just on the eve of this argument? The trial in last month, in May 2020. In last month? Last month, Your Honor, yes. And in that trial, that was the U.S. v. Novus case in the Eastern District of New York. And in that case, the Novus- PACNET processed payments for the Novus defendants. And the funds, at least- At least 900- And this is consistent with PACNET's own statements. At least $900,000 of the funds in the Novus case are at issue in this case. So the same evidence that was used in the trial would be what would be used in the criminal forfeiture and Salier proceeding. Okay, so on remand, the government is prepared to litigate PACNET's petition? I'm sorry, Your Honor? On remand, the government is prepared to litigate PACNET's petition? Yes. There's not going to be more stays because the trial is not concluded? Yes, that's what I expect. What is it that you want from us? What is the decree of this court that would satisfy- The United States is requesting that the order of the district court be affirmed and the case remanded to the district court for the commencement of the ancillary forfeiture proceedings so that the claims to the property at issue may be adjudicated. And at that point, Judge Azraq would have before her everything that she would need to resolve all of the issues? There would be a process. The government disagrees with the assessment of applying the rules of civil procedure. The forfeiture statutes provide an ample and adequate rules for- The point I'm trying to get at is that the district court would be able to apply those rules in the first place. Yes, the forfeiture statute rules, there would be a notice provision so that any and all third parties with an interest in the funds would be given an opportunity to appear. Well, maybe it's your colleague who would answer this, but is PACNET still listed as a transnational criminal organization? What's the situation there? My understanding is that they're no longer, and that was pursuant to the agreement, which actually was the impetus for the interpleader action. And notably, in that agreement, it was contemplated that there would be a forfeiture proceeding against the funds that PACNET deposited into the interpleader deposit. It is in the agreement. PACNET was aware that there was a forfeiture investigation going on, and the appellant's use of the interpleader to adjudicate the ownership of funds is an improper attempt to circumvent the procedures governing criminal forfeiture. The government, upon a showing of probable cause and upon a showing by two judges, a magistrate judge and the district judge, both found probable cause to believe that the funds in the interpleader were proceeds of mail fraud and involved in money laundering. So the government was, the seizure of the interpleader funds was proper and was contemplated by the agreement back in 2017 by PACNET and OFAC. Could you just let me know, what's the current status of proceedings in the District of Nevada? Is that behind this completely? No, Your Honor. The extradition proceedings are pending. The proceedings will also involve the turnover of the government's evidence against the PACNET principles in that case. Well, tell us something, if you can, about the extradition proceedings. What's going on and where is it going on? My understanding is that the extradition proceedings are going on in Canada. My only information is that it is pending and has not happened yet. But I just wanted also to add, as far as the interpleader, the forfeiture ancillary proceeding provides a mechanism where victims of these mass mail solicitations, these mass mail fraud solicitations can be provided with remission. The interpleader does not afford that. That's part of why the ancillary proceeding pursuant to Section 853 is the exclusive remedy to adjudicate assets subject to forfeiture. Let me just have one moment. So, in sum, appellants are third parties and as such, lack standing to bring a direct challenge to the preliminary order of forfeiture. Appellants' only recourse is the ancillary proceeding. If appellants choose to, they may appeal from the final order of forfeiture when entered. Unless the Court has any other questions. Thank you. Sorry, I was unclear whether the other government counsel was going to address the court. To answer your questions, if we have any and not seeing any, we'll hear rebuttal. Thank you, Your Honors. Just briefly, first of all, just with respect to the issue of the underlying agreement with OFAC, my adversary statement is really a bit misleading. What happened here is that in response to the designation, which PACNET believed was unlawful and improper, a long negotiation ensued, which led to an agreement by which PACNET agreed to provide certain information to the government and then OFAC came back to them about accounts and clients and OFAC came back to them and directed them to go ahead and bring the interpleader and fund it. And so PACNET's expectation was that the interpleader would go forward. It would be the mechanism by which these claimants could make claims and the funds could be dispersed and the PACNET entities could be absolved of any liability for those funds. And also, at the time after the agreement was signed, OFAC agreed to delist them, to rescind the designations, and it did so. Two other quick points, if I may. I think counsel's discussion here illustrates why it's critical that this court not simply affirm the stay but vacate it and remand with instructions to proceed expeditiously. Not only have these proceedings dragged on for years, but as the Supreme Court and this court have held, an indefinite stay violates due process. And indeed, in the $8,850 currency Supreme Court case, the court said that an 18-month stay, in that instance between a seizure and a forfeiture, was quite substantial, even though it did say that there was no due process violation in that case. And when we were approached about the government's decision to seek this advisory opinion from the district court, we asked, you know, how quickly can we get going on the proceedings after the stay is lifted? And counsel was unable to provide any timetable. And so we really think, and there really is nothing to stop the government from asking for another stay. So we think it's important that this court lay a marker down that it's time for these ancillary proceedings to continue. The last thing I just wanted to emphasize was that counsel's sort of guilt-assuming statements describing PACNET as a co-conspirator, et cetera, illustrate why this court's guidance is sorely needed. And I want the court to bear in mind, once again, that although my adversary keeps saying PACNET, PACNET has not been charged in any criminal proceeding, neither has checks for Accurate, who are the other petitioners here. And so we respectfully ask that the court grant the relief requested. Thank you, Your Honors. Thank you all. We'll take the matter under advisement.